Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 241475 United States v. William W. Robertson and 241540-241541 United States v. Daniel Griffin. Will counsel for Griffin please come up and introduce yourself on the record to begin. Thank you. Good morning your honors. If it please the court I'd ask your permission to reserve one minute. You may. For rebuttal and with your permission I'd like to head straight into the two sentencing issues and reserve. Go ahead it's your time. Thank you very much. Great choice. Thank you. As to the first of the two. Please identify yourself first. Oh I'm so sorry. Let's pull the clock back to the time back to six minutes. I'm usually being yelled at for not being close enough. Tom Hoopes for the appellant Griffin. So of the two sentencing issues here the first is grouping and the second is causation. As to grouping as the court knows there were essentially three groups involved here. Two on a plea and one otherwise. The first was what we called the TPS counts which were the overtime fraud. The second was the BHS which was the Belmont Hill School applications and the third was the taxes. The probation department grouped together the first two which is TPS and the Belmont Hill School. Now I'd be less than honest I'd say that was the first time that anybody involved in the case thought there were two rather than three but that's not the point. The technical fact is the probation grouped it that way and they grouped it under Jongi and what we'd ask you to do is reconsider the Jongi position and put it more in the category of Linocci for the simple reason is this. Jongi was decided in 1998. That was I would suggest the adolescence of the guidelines. Booker didn't come out until 2005 introducing more flexibility. Linocci out of the second circuit is more flexible and I would argue more in line with the spirit of the Booker post Booker cases focusing on two things. The preliminary portions of the guidelines, the introductory comment has two specific sections. One is to limit the power and impact on sentencing of one thing which is the guideline sentencing decision impact and in this case that's exactly what happened under the grouping. If there were three groups it had little or no impact. Under the two groups it had massive impact meaning this. This case was not about Belmont Hill School overtime. This case was about one thing which was overtime fraud. That's why it was investigated. That's why it was charged. That's what the headlines were all about. Belmont Hill School was a throwaway but if you group the two under the guidelines then the Belmont Hill School trumps so to speak the TPS. The loss there gets higher and it has a greater impact on how the guidelines come out by as much as four levels. Now the second focus that's in the introductory comment is this question of that the offenses are closely related. Well the content of the guidelines themselves identify factors that make sense. They identify for example who was the victim in the case. They identify who was the actor or what was the act and thirdly what was the nature of the harm. The victim in this case of the Belmont Hill School which is driving the bus at this point under these guidelines did not think it was a victim. Didn't want any gain from this. Didn't want any loss from this. So why are we doubling essentially that specific piece of the guidelines. Mr. Hoops the government says look these two types of fraud are grouped together in the little chart from the sentencing commission and they say you didn't respond or you haven't made an argument about note six application note six. Yes. Which says as an example the defendant is convicted of two counts of theft of social security count social security checks and three counts of theft from the mail each from a different victim. All of those counts are to be grouped together. And then it goes on to say although counts arise from various scheme each involves a monetary objective and is if each involves a monetary objective then they should be grouped together. So what's your argument in response to that. They could be they could be and that's the interpretations of some of the circuits clearly but quite frankly it doesn't. I would suggest that in light of the other aspects of the guideline those aspects should guide the guideline rather than saying it was an abuse of discretion because could be means that it could be in and was in this instance. Are you saying I thought you were saying that as a matter of procedural. Yes I'm sorry. I meant one could interpret it that way. The interpretation that I'm asking for is the interpretation that I've been advocating which is not the present standard. You all certainly could have a standard which said for example if the harm was all of one sort then presumptively there's a rebuttable presumption taking a look at or to be rebutted by those three factors which are the victim the transaction and the harm. That's not the standard at present. The standard present here is is Changi which is rigid to say the least. Let me ask if your argument we were to decide against it. Did you raise an alternative argument under 35 53 that notwithstanding even if the guidelines reply this way you would still have an argument based on 35 53. I believe that we did that argument your honor at the end. In other words I think we had 10 pages of the brief that went to those exact points. To be honest with you I can't say that it was exactly the argument which you're articulating which is which is which is that if you don't have this interpreted in that interpretation but it was clearly all of those factors and this was a part of it. Mr. Hoops to go back to Judge Thompson's question. You're asking for an interpretation of the guidelines which is usually a question of law. Do you say this is an abuse of discretion standard of review or that this is. No I'm saying this is DeNovo your honor. This is not abuse of discretion. You know she she applied the standard that was provided by probation which was chunky which is not my argument which is not Lino G. I'm asking the court to. So are you saying that the janky was wrong wrongly decided. Yes. You want us as a panel to do something about it. Yes your honor. And what is the standard you would like us to adopt the standard. I respectfully I'm in front of three people much smarter than me. But what I would suggest is is that it could be rebuttable presumption that to look first at the harm but to be rebutted by the three other factors identified in the action. Yes or no harm. Yes or no. In other words we have here just to announce whenever you want I can sit down. This was a game from from from BHS not a loss. I've got it even in the same. Thank you. Ballpark neighborhood. Thank you very much. Thank you counsel of attorney for Robert Robertson. Please come up and introduce yourself on the record to begin. Good morning. And if I may reserve a rebuttal as well I would request to do that. OK. You may. May it please the court. William Fick for Sergeant Robertson. I am also going to focus on the sentencing issues given the very limited time. The 36 month sentence in this case was a dramatic outlier because the district court refused to meaningfully address unwarranted disparities among similarly situated defendants. Let me ask you one question. Other defendants we're aware had been sentenced by other judges. Had they by the time your client was sentenced had they been sentenced by the other judges or was it before or after. So at the time of sentencing in this case in our sentencing submission to the district court we presented a chart of I think 11 sentences already imposed in state trooper overtime cases and asked the court to consider and to consider the issue of unwarranted disparity and to avoid unwarranted disparity in sentencing compared to those cases. Later in the briefing we sort of in talking about substantive unreasonableness which is different from what the district court considered at the time but just as something for this court to look at. We added to that mix some Boston police overtime cases some of which I think came before the Robertson sentencing some of which came after. But in our view those confirm and further solidify what I think this court should conclude which is that the sentence imposed in this case was both procedurally unreasonable and substantively unreasonable. Mr. Frick I'm a little concerned about what we're to make of the district court statements that either could be read. She does say I did consider all of the 3553A factors but at the same time she seems to be saying well these sentences were in front of the district court and I don't think they were in front of the district court. I don't think they were in front of other judges not before me and law enforcement overtime theft is a serious crime and it doesn't matter to me if others got more lenient sentences. I wouldn't give such lenient sentences and so that seems to be not in accord with the district court's position on this issue. I think it's in accord with sentencing law. You do have to look at sentences imposed by other judges and the guidelines themselves make the determination that equity and sentencing among like defendants is an important value. Are you arguing that she actually disregarded the guidelines? I think based on the language she used especially the first thing she said in addressing this argument that I think is the inevitable conclusion to draw. I mean her words were I take issue counsel with a comparison to other judges and other cases. I've been in the criminal justice system as a lawyer and a judge for more than 30 years. That suggests a kind of rigidity or unwillingness to do what the guidelines command which is to consider and attempt to avoid unwarranted disparities. Now I acknowledge of course no two cases are identical. She doesn't have before her all of the evidence in all of the other cases but that is a problem that is always going to exist and the court has to grapple with that. We as defense counsel tried to put in front of her arguments to explain why we think the other trooper cases were similarly situated and in fact at least three of the defendants who were lieutenants and received probationary sentences actually were much more culpable than Sergeant Robertson. And the court simply did not grapple with that. Would that be procedural reasonableness argument or substantive or both? So one feeds the other. It's procedurally unreasonable for a judge not to engage in the exercise of a warning. So procedurally she should have at least considered the whole universe or the ones who have been sentenced maybe at least those and made, you know, say I've considered those and then you go to substance. Well I would say more than just say she considered but make some kind of a reason, discussion or statement on the record about why she chose to do something radically different than what the other courts have done. That's the procedural part. The substantive unreasonableness part is really a review for this court to make, you know, sort of on its own merits. I mean something that is procedurally unreasonable of course is more likely to be substantively unreasonable. But substantive unreasonableness is its own standard, its own decision for this court to make. And look, I would say that, you know, I wish I could point to more cases where this court has said a sentence that is close to the guideline range is substantively unreasonable. There aren't many of those because the district courts have a lot of discretion. But that discretion has limits and I would note that the Supreme Court in Gaul 20 years ago said courts may not presume the guidelines range is reasonable. And empirically I think the courts, the dearth of cases finding substantive unreasonableness may suggest that the appeals courts, courts of appeals are not sort of exercising the kind of scrutiny that Gauls expected they would. But if ever there were a case for this court to take that role, I would suggest this is one. I have an empirical question. The government argues that the earlier sentences were too lenient and that they didn't stop overtime fraud from occurring in the state police, in the Boston police, in the MBTA police. It's an argument they made, but was there any empirical evidence, one, I'm questioning whether that's appropriate, but even if it is appropriate, was there any empirical evidence that in fact after other miscreants who did the same crime were sentenced, there was an increase in the number of miscreants? I'm not aware, Your Honor, of any empirical evidence, certainly not that was sort of vetted in the record. And I would also say that the scholarly literature about deterrence generally is overwhelming, that the length of sentences really is not a contributing factor to deterrence. It's all about getting caught and the fact of prosecution. And these overtime cases were sort of close in time. I would suggest my own sort of view of the empirical of what happened here is that there really wasn't even enough time for the fact of prosecution in some cases to feed back on what's still going on in some of these agencies. This is all sort of happening seriatim. Let me ask you something again. You mentioned that you provided some Boston police overtime, or you have information that maybe it's before us now, that they've been sentenced to lesser sentences, but at the time Judge Guzman was sentenced, those weren't available. So how can we consider those sentences within that universe? Because, again, she's not a soothsayer. She can't be predicting what's going to happen in the future. We had a collection. We focused at the sentencing in the case on the state trooper overtime cases. I believe there were 11. And so those are the ones we brought to the district court's attention. The Boston cases we brought to bear in the briefing really to address the substantive reasonableness question for this court. We acknowledge those weren't before the district court, but they confirm our view that the sentence is a radical upheaval. That would be in the greater universe, just to show it's substantially reasonable. But procedurally, those cannot really, because they haven't occurred yet. Well, I mean, candidly, some of those, I'd have to go back and look at our list. I think some of them actually had already occurred before Robertson was sentenced, but we did not point the district court to them expressly. Would you agree that the ones that still haven't occurred, Judge Guzman, procedurally, if you're correct, there's no way she can look at those? Yes, I can't argue with that.  Anything, I think I had a question. The only other question I had is the government also makes the argument that you weren't necessarily giving the district court enough information to compare apples to apples. And simply because there were other persons involved in overtime fraud, that that wasn't enough for the court to make the kind of apples to apples determination. Well, you know, we attempted to make the best argument we could with the information we had, right? We tried to characterize the cases in chart form and talk about the way they were disposed and the nature of the evidence and the rank, the rank of some of the officers involved, the amount of loss. Look, we don't have access, of course, to the PSRs from from myriad other cases. But with the evidence we could marshal, we tried to make the best presentation we could to tell the court that, look, you know, probationary. One of the things the government points out is that a lot of those cases that you pressed were cases involving defendants who had pled. And, you know, in our system, you get a bonus for pleading as opposed to putting the government through the rigor of a trial. That's that's a fair that is a fair distinction. That is true. I would suggest, however, that a 36 month trial penalty is still a radical disparity that the court that the court did not justify. We were talking about probationary sentences on a plea and a 36 month sentence on a conviction here. And when we draw in the substantive reasonableness argument, when we draw in, for example, the Boston police cases now for this court's broader consideration, you know, the one case there that went to trial and resulted in a conviction of a high level supervisor who supervised a scheme with a larger loss, et cetera. That defendant only got a year and a day after conviction of trial. It's someone who has a higher level of authority, higher loss, et cetera. And so that just, again, confirms the the bigger picture question this court has to answer, which is, was this sentence substantively reasonable? Thank you. Mr. Crum. Your Honor, may it please the court, Randall Crum on behalf of the government to start with the disparity issue, which has been discussed here. I think for many of the reasons that Judge Thompson was noting, we think that there was just insufficient evidence here to establish sort of the threshold, baseline question of whether a disparity existed. As we pointed out, and worth noting that Robertson was sentenced after Griffin, but at Griffin's sentencing proceeding, the government meticulously went through the different prior sentences that have been addressed and explained to district court that they had pled guilty, most had cooperated. They also had different guidelines. They've been convicted over different periods of time. They did not include conspiracy counts, which changed the guidelines. The numerous other differences, there was really no case that was a fair comparator to this. Did anybody else go to trial or it was just these two? I believe there was at least one trial, and I won't try to guess here because I don't remember if there was more than one. But the great majority, it was changes of plea with or without cooperation. And again, it's also worth noting that the guidelines were different, even I believe of the one who went to trial, and that information was also not provided to district court. So the district court was in no position to make, to know whether they were similar or different. But the government represented that they had different guidelines because this one occurred over three years. These were for other, those were for shorter periods with other loss amounts. All of that goes into the guidelines calculation, as well as the fact that these particular people were working in a unit specifically charged with managing the grant money. So their responsibility with respect to that money was different from others in other units who abused the same grants or other grant money, but didn't have the specific charge within their unit to actually manage. Did any of the others order destruction of documents? I'm not aware that any of them did. And these are all part of the information that district court didn't have. And that's why we really rely here primarily on the fact that in order for a district court to make a fair determination of whether a disparity exists, that it has to be cognizant of, it has to have enough information to know that these are similarly situated in terms of the underlying conduct, in terms of the guidelines, because if there were other convictions, in this case, Griffin had other offenses, that also affects his guidelines. Let me also ask you from a practical perspective, what happens at the district court level when you have multiple defendants, particularly with the ones who plea, if there's a cooperation agreement, you calculate, stipulate certain guidelines, we're not going to use this enhancement, X, Y, and Z, or you're going to use this one, this is a loss amount, you negotiate that, and then if there's cooperation, that's going to get factored in. If there's no cooperation, still there's always like a benefit, and unless the district judge decides to apply other guidelines or vary upwards, these defendants will get a benefit. That's what happens at the district court, correct?  When somebody goes to trial, there's no stipulations as to guidelines, there's more evidence that's been unearthed, that's before the district court, judge has a transcript, probation will calculate the guidelines, and the government's position, you're not stipulating, but if the guideline technically applies, then you advocate for the legality of that particular sentence. So it's different to compare apples to oranges, correct? Well, yes, and certainly I think the point I was trying to make first is it's not merely the difference between trial and plea, but between what the information that came out in the sentencing process between the two, because yes, that amount of a sort of a trial penalty, so to speak, is expected by the guidelines. If there's a plea, if there's an agreement. Usually there's a stipulated statement of facts, maybe about two pages long, or maybe in these cases a little three, four, five, let's say, but if there's a trial, there's probably hundreds of pages of trial testimony, witnesses, there's, you know, probably the PSR is going to be, you know, long, lengthier, because there's more and more explanations as to how the scheme and things go on. I would agree that in a trial case, you have much more evidence before the court to consider. So a district judge in a trial has probably more beef to sentence than when you have a stipulation. And indeed, it applies here to the idea of understanding the relationship between the two defendants, and understanding through the trial process what exactly happened and who was responsible for what. Those are factors reasonably considered in the sentencing process. It wouldn't necessarily come up in a pled case, because we wouldn't know the kind of information the district court had here. I think the district court clearly had a lot of information. And I do take your honor, Judge Lynch's question. Mr. Cromb, may I ask you a question? Yeah, please. We have two cases here. Yes. Mr. Griffin did not, as I recall, on appeal, make the same argument that Mr. Robertson makes as to sentencing disparity. Your opening comment said, if you look at what the judge did in the Griffin case, there was lots of explanation. And basically, the defendants didn't do a good enough job in presenting to the judge in the Griffin case. But the issue is in the Robertson case. So did the district court in the Robertson case say, I've already discussed in the Griffin case why I think there was no disparity? Because the comments that are in the record in the Robertson case certainly don't say that. Yeah, correct. One thing is that Griffin does make a disparity claim. And these statements that the government made, I was really relying on the information before the district court more than the particular statements. I was going to address your point about what the district court said, to say that the government had addressed and did address in its filings in Robertson as well. That these cases were being offered as comparators, weren't fair comparators, because they were pleasing for other reasons. I was mentioning that more to mention, and Griffin does make on appeal a disparity claim as well. That the information was represented and has not been contested that the government was right in distinguishing those cases on the grounds that they weren't conspiracies. That they did not exist for the same number of years that many were pleased and many had cooperation. So that was addressed too. But your Honor's point about what the explanation was, again, the court was succinct in what it said. But it did say repeatedly, those cases weren't before me. I don't know what their evidence was. The court could have been, you know, explained a little better what it meant. Does that mean there's no obligation to do that consideration? Well, I think the difficulty of this court said- That's really an incorrect statement of law. Well, this court has said that a meritorious claim of disparity relies as a premise on an apples-to-apples comparison. If a court does not have any other information, then these people were also convicted of overtime fraud. This person is, and knows nothing else. But the court did have a great deal more information. The charts that were presented were the best that defense counsel could come up with. Defense counsel come from a number of different places. The U.S. Attorney's Office actually has a much better repository of information about sentences in overtime cases. Yes? Yes, and again, what I want to say is that we responded to those presentations in our memos, in opposition to the sentencing memoranda, saying that these were not valid comparators because they were pleasant for those reasons. We take the district court's explanation to be, I don't have any information that tells me that these are ones that I need to consider because they are so similar that they should affect my judgment here. And again, we do acknowledge the court could have explained that better. But it clearly said at least three points, I don't know the evidence in those cases. And that's critical to making an apples-to-apples comparison that sort of drives a disparity analysis. Well, how do you think we should interpret what Judge Lynch is pointing out as to what the district court actually said? Well, again, I think you can read it yourself, but I think it's been pointed out that at each point, the court said something along the lines of, and I had them here, they weren't in my courtroom, I didn't see their trial, I don't know their evidence. I didn't have those other cases, I don't know what their evidence was. So the court did not, it's true, find those to be valid comparators or to find that they affected its sentencing decision. All right, so you think the better interpretation of what the court said is a comment on lack of data to do adequate comparison? Essentially, if it had, I mean, again, worth noting again that the government had argued in both cases in its filings that these were not comparable cases, and the court... But she didn't say that. No, again, the court, I just think the interpretation in light of the information presented and the fact that there was no attempt to rebut the government's distinguishing of those cases as valid comparators. Essentially, they appeared to want the district court to simply accept because those were overtime cases and because this is an overtime case, they're valid comparators. And I don't think that's the way disparity analysis works. And they never attempted to fill that gap despite opposition in our papers that these were not. Do you want to turn to the other argument? Well, I just want one more on sentencing before you turn to that. Counsel made the statement that the subsequent sentencings go to a substantive disparity argument, a legitimate substantive disparity argument. In other words, things that happen after that sentencing can nonetheless be considered when you're trying to figure out if there was a substantive reasonableness. What do you have to say to that? Well, it seemed like a difficult rule to apply. I mean, typically, we're looking at the reasonableness of the sentence at the time it was applied and absent a change of law or something like that. I mean, I suppose there's newly discovered evidence or something that could drastically change something but suggests that later arising sentences could render a sentence unreasonable on disparity grounds. Seems like it would create a vast number of problems. And I don't think we've ever seen that happen. Typically, you base it on the record that was before the court. Judge Thompson's question prompts me to ask this question. Some of the evidence before the district court actually had to do with national statistics about law enforcement officers who had engaged in overtime fraud and had been sentenced and showed that the sentence here was quite a departure from the national average.  So... I mean, I can't say on that point, I think that wasn't really talked about at the hearing so much as the within district sentences. And I'm sure, I don't know what the facts of those cases were either, but I understand that that was another point that was made. I understand the focus here mainly to be on the specific cases that were called out to the district court. Do you remember how the government responded to that allegation in the memo it filed with court? To be honest, Your Honor, I won't say that I do respond. I think we addressed particularly the identified cases in the charts and stuff that had been identified as within district cases. But I do want to point out, because it's a point we make in our briefing, that they dispute. Courts can make, under Gall and Kimbrough, they can make different views about the severity of certain conduct. Disparity remains important. It's not to be disregarded. But the fact that a particular line of argument may be persuasive to one judge and not persuasive to another as a grounds for variance is not something that is prohibited in any way. In fact, it's acknowledged to be possible. And to the extent that these are within guideline sentences, in one case below guideline sentences, and to say that a court can't, in disregarding cases that were dissimilar and sentencing pursuant to the guidelines or slightly below, that that would somehow be an inappropriate disparity is difficult, in the government's view, to accept. The guidelines are supposed to recognize differences in culpability, court sentence pursuant to them. And again, I think within the circumstances here, in the absence of direct comparators, that could not be an abuse of discretion. Counsel, one of the arguments counsel made, and he cited Gall, I think the case he's referring to, it's a post-Gall case, it's Nelson, that says that district court can't simply say, I'm sentencing under the guidelines because it's presumed reasonable. Can you address that argument? I'm sorry, but I'm not sure. He said that under Booker, but I think the correct case is U.S. versus Nelson, that the Supreme Court has said there's a presumption on appeal, of course, that the guidelines, there's that presumption, but that doesn't apply to district level. At the district level, you have to do the whole exercise. And counsel was saying that under Booker, which Nelson is a progeny of Booker, you can't do that at the district court, and that's what happened below. If you could address that. Right. Is this the first argument that was being made? I believe it was the second argument. OK. I mean, I think our view of this is that the district court does have to perform the procedural analysis, and that it did. I mean, I guess I don't know how that argument changes what our position is. I'm not sure I recall precisely the point based on Nelson that was being made. Judge Lynch wanted, I think, also to turn to the next argument. Which was the first argument? Restitution? No, it's the Griffin argument about the Belmont Hills School, which says, let me sum it up in my words. Belmont Hills School gave scholarships to Mr. Griffin's various children. Belmont Hills School says, well, we can't tell you if he had submitted accurate information and had not undercounted his income. And then the government says, and he also undercounted the value of his house, et cetera. We cannot tell you, says the Belmont Hills School, that we would not have given that scholarship aid anyway. So the government says to the district court, OK, we won't address this as restitution. We will address this as forfeiture. And you got the district judge to order the forfeiture of roughly $180,000, which was the equivalent to absolutely all the scholarship aid that was given. And there is still, even for forfeiture, a causation requirement. And I understand him to be saying, you didn't meet the causation requirement for forfeiture. And the only basis that I saw in the briefing, I didn't read the complete sentencing transcript, was, oh, well, he admitted to tax fraud. He admitted he underpaid his taxes over a seven-year period by a sum of, what, $125,000. And that's all it takes for me to assume that, had the school been given accurate information, it wouldn't have given this scholarship aid. So what's the government's response defending this forfeiture order? Well, I think there was a little more information than that before the, and the district court said a little bit more. Which was, there was the testimony that's included in the government's addendum, that while they couldn't specify how the aid would have been different, one of the testimonies was that a primary driver of the parent contribution is income. The income had been vastly understated. One year, 2014, it had been more than reduced by half over what it would have been. Assets had been reduced by hundreds of thousands of dollars over what they would have been. And what the district court found, based on the testimony that these were the critical drivers, was that there had been some loss. And so that's the sort of the causation requirement. When you get to the question of then how much, as we point out with respect to the loss calculation, the court adopted the PSR's assumption that you could use gain. And with respect to the forfeiture amount, it's the total amount of ill-gotten gains minus any direct costs that the defendant can establish. It was the total amount of scholarship aid to all of the kids, wasn't it? Right. But it was the total amount that was the product of falsified. I mean, it was not years in which he didn't falsify. Well, that's what is at dispute. Right. So what's the causal relationship that has been established as to the entire amount for all of the kids, especially since the school also says once one kid is in, we try to keep all the family members in our school. We give scholarship aid for that purpose as well. Right. And I guess my response to you, Your Honor, is that the way that the law works in this context is once the forfeiture is the scorchment of ill-gotten gains. And the question is, once causation is shown with respect to a portion of them, where the burden falls in terms of distinguishing which were ill-gotten gains and distinguishing them from proper receipts. And what we point out is the court's cases are clear under either definition. The defendant has the burden of showing what portion of them was legitimate. Once the government has shown that there were ill-gotten gains obtained through a fraudulent scheme, and he admitted there were. And again, I think we establish the basic burden of causation that hundreds of thousands of dollars in undercounting would have caused some change. And then the burden falls on the defendant to establish if there's a portion of them that were not ill-gotten under the precedents and under the statute, which they did not do. So the court was entitled to rely on the total amount of ill-gotten gains for purposes of forfeiture. Were the financial aid applications that were submitted to the school submitted during the entire period that the conspiracy was going on? My understanding is that I guess I would have to check to see exactly. I believe that they continued throughout that period because there were several years that were encompassed in the forms. I believe the only ones that we would have brought into evidence were the ones that were affected by the misstatements that were affected by this conduct. Just one final matter, which I mentioned earlier, the restitution, the district court basically took all the amounts, the big amount, and ordered restitution. Shouldn't it have been apportioned? Well, I mean, I think here the district court had the information in front of it and believed the statements make very clear that the two of them worked sort of hand-in-hand in perpetrating this scheme. And it found that they had joint and several liability, which I think one of the defendants in their briefs admits is sort of the default starting point in this kind of a scheme and jointly undertaken activity. And I don't think that there was anything established that suggested that should be different here. Again, we're talking about just the fraud that related to the agency that they were both involved in. The court found that they were both liable for it. And I don't know that an argument's been made that it was abuse of discretion, not to apportion when the default assumption would have been that it was joint and several. OK. Thank you. Any further questions? Thank you, Your Honor. Thank you. Rebuttal, Mr. Hoopes. One minute. Thank you, Your Honor. I hope I'm permitted to answer a question that was not directed to me, but directed to my co-counsel because the issue involves me, which was your question, Your Honor, Judge Foreman, to a lenient, do we have enough empirical data? And I just want to assure you that in that same argument that I raised as my co-counsel's argument, our co-counsel, co-defendants, is all the detailed information that was available at the time. And it does not change going forward. Let me say it another way. There are three buckets of these kinds of cases. One in 2016 out of Quincy with a lieutenant who went to trial on very limited information in the indictment. It was a five-month kind of window. And he ended up doing one year. That was prosecuted by this office. The second sets of cases were all concluded as part of the package that was before the judge in sentencing in this case, which is two sorts of cases. One, which are the state police cases, which are all these Troop E cases. And the second are the cases coming out of the warehouse overtime by the Boston Police Department. They both ended up in about the same place. They're both prosecuted by this office, by and large, a few cases by the AG's office, which cherry-picked. Nobody went to jail, including the three lieutenants referenced here. Everybody else pled in one form or another, except two sets of people in the warehouse case. Four got not guilties, and the one lately. Turning then to all the DPS cases, all the Troop E cases, in those cases, as Judge Gilpin has indicated, those were all by way of police. But in the sentencing package before the court were all the details I acknowledged in there. Different bandwidths, different time, different events. Of course, there was plea negotiation. The question simply before the court is, how much deference to plea negotiations when trials, what's the trial penalty going to be, as was articulated here? The trial penalty to my client was five times anything that anybody ever got, including the last trial where the Boston police captain, who was in charge of all the fraud in the entire warehouse, got one year for going to trial. So she had all that information. The case is in front of me. Thank you. I know it. Thank you. Mr. Fick, one minute. Thank you. So largely, the gist of the government's argument is that, number one, it's hard to compare apples to apples. And then they try to say that there really were important distinctions here. We, of course, think those are distinctions without a difference. But the core problem is that the district court did not address them in a reasoned way at the sentencing, and in fact, seemed hostile to the enterprise of even trying to address them. That's what makes the sentence procedurally unreasonable. In terms of the Boston police cases, the second set of cases that we add on page 30 of the brief here to address this court's broader substantive reasonableness analysis, we didn't put the dates of the sentencing in the brief. But I believe most of the cases are 19 to 21. I think some, if not many, of those sentencing had already occurred. But the bottom line is we chose at the district court level to focus on the trooper cases because those were the closest apples we had. Here, though, this court has a broader ability to take a look. And so we added the Boston cases. But most of those had already occurred. The final thing I would say is that the government suggests, well, the guidelines were different. But in a whole separate section of our brief, of course, we argue that the court erred in three different ways in calculating the guidelines here, resulting in essentially a doubling of the advisory sentencing guideline range. So even that distinction, I think, falls apart when the court drills down to assess the sort of legal errors that the district court made here. Thank you. Thank you, counsel. That concludes arguments in this case.